DARRYL DIDIER AND ELECTRIC COMPANY OF OMAHA, APPELLANTS, V. ASH GROVE CEMENT COMPANY, APPELLEE.

718 N.W.2d 484

Filed July 21, 2006.   No. S-03-924.

James R. Harris and Mark P. Grell, of Harris Law Offices, P.C., L.L.O., for appellant Darryl Didier.

Robert D. Mullin, Jr., of McGrath, North, Mullin & Kratz, for appellee.

CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Darryl Didier filed a negligence action in the district court for Cass County against Ash Grove Cement Company (Ash Grove), seeking damages for injuries he sustained after falling from the roof of a building located on Ash Grove's Louisville, Nebraska, premises. Electric Company of Omaha (ECO), Didier's employer, had been hired by Ash Grove to perform certain work at the Louisville site. The district court granted summary judgment in favor of Ash Grove. Didier appealed to the Nebraska Court of Appeals. In its opinion, the Court of Appeals reversed the grant of summary judgment and remanded the cause to the district court for further proceedings. *Didier v. Ash Grove Cement Co.*, No. A-03-924, 2005 WL 2276848 (Neb. App. Sept. 20, 2005) (not designated for permanent publication). Ash Grove sought further review. We granted Ash Grove's petition for further review. We reverse the decision of the Court of Appeals and remand the cause with directions to affirm the order of the district court granting summary judgment in favor of Ash Grove.

## STATEMENT OF FACTS

On March 19, 1997, Didier fell from the roof of a building located on the site of Ash Grove's Louisville facility and sustained injuries. At the time of his accident, Didier was employed by ECO, an independent contractor retained by Ash Grove to relocate a cable tray. The cable tray was accessed from the flat roof of the building from which Didier fell. Didier fell off the flat roof while he was walking backward and carrying cable. The fall occurred during the first morning on the job after approximately 15 minutes of work. Didier was not wearing any "fall protection" equipment at the time of his accident. Didier fell nearly 20 feet to the ground, landing on a concrete surface and fracturing various bones throughout his body. After the accident, Didier underwent multiple surgeries and incurred significant medical and hospital expenses.

Didier filed a petition on March 5, 2001, asserting a negligence action against Ash Grove. ECO was joined as a "Third-Party Plaintiff" to protect its interests relative to Didier's workers' compensation claim. Didier alleged that a proximate cause of his fall was Ash Grove's negligence in (1) failing to provide

a reasonably safe place to work, (2) failing to have handrails or other safety devices on the roof, (3) failing to warn Didier of the dangers, (4) designing the building in such a manner as to not allow the work Didier was engaged in to be performed in a safe manner, (5) failing to have a safety net in place on the ground, and (6) failing to exercise reasonable care in supervising ECO with respect to the use of safety equipment. Didier alleged that Ash Grove was, at all times, acting as a general contractor and retained control over the work of Didier and ECO. In his petition, Didier also alleged that Ash Grove breached various duties as they related to the standard of care, including the duty to maintain the roof of the building from which he fell in a reasonably safe condition, and that thus, Ash Grove breached its nondelegable duty to provide a safe workplace for Didier. Didier alleged that Ash Grove had a plant, mine, and mill at its Louisville facility and that the U.S. Department of Labor had rules and regulations that were applicable to facilities such as Ash Grove. Didier sought a determination of ECO's rights and liabilities relative to his workers' compensation claim and sought judgment against Ash Grove for his past, present, and future medical expenses; his loss of wages and permanent loss of earning capacity; and his past, present, and future disability and pain and suffering.

Ash Grove moved for summary judgment on February 19, 2003, alleging that there was no genuine issue of material fact and that Ash Grove was entitled to judgment as a matter of law. At a hearing on Ash Grove's motion on July 8, the court received exhibits, including various depositions and affidavits, and heard arguments from the parties. On July 29, the court entered a lengthy opinion and order granting Ash Grove's motion for summary judgment. The court summarized the evidence, which we discuss below as relevant to our analysis, and concluded, inter alia, that there was no evidence to support the claim that Ash Grove retained control over the work contracted to be done by ECO; that there was no evidence to support a conclusion that the work to be performed by ECO constituted a "peculiar unreasonable risk" of harm such that Ash Grove had a nondelegable duty to protect Didier; and that as a matter of law, Ash Grove was subject to the regulation of the Mine Safety and Health Administration (MSHA) and there was no competent evidence

that Ash Grove had breached any relevant MSHA regulation which would have established a duty of Ash Grove. The court dismissed Didier's petition.

Didier appealed to the Court of Appeals and asserted that the district court erred in granting Ash Grove's motion for summary judgment. The Court of Appeals determined that the court had not erred in concluding that (1) there was no evidence to support a conclusion that Ash Grove retained control over the work done by ECO and (2) there was no evidence to support a conclusion that the work to be performed by ECO constituted a "peculiar unreasonable risk" of harm such that Ash Grove had a nondelegable duty to protect Didier. In its opinion, the Court of Appeals stated that the district court did not address the issue of whether Ash Grove breached a nondelegable duty to provide a safe workplace.

In further ruling on the appeal, the Court of Appeals determined that there was a question of fact precluding summary judgment and that the district court had erred in granting summary judgment on the issue of whether Ash Grove's plant fell under the jurisdiction of MSHA or under the jurisdiction of the Occupational Safety and Health Administration (OSHA). As noted, the district court had determined that Ash Grove fell under the jurisdiction of MSHA. In the Court of Appeals' opinion, it stated that the district court had erred when it had concluded that there was no genuine issue of material fact with regard to whether Ash Grove was a " 'cement plant' " and, as such, was considered a " 'milling' " operation exclusively under the jurisdiction of MSHA rather than of OSHA. *Didier v. Ash Grove Cement Co.*, No. A-03-924, 2005 WL 2276848 at *10 (Neb. App. Sept. 20, 2005) (not designated for permanent publication).

In its opinion, the Court of Appeals acknowledged that the record contained various references to Ash Groves' Louisville plant as a "cement plant" subject to MSHA jurisdiction, that the record showed that a MSHA inspector was conducting an inspection on the Ash Grove property at the time of Didier's accident, and that MSHA conducted an investigation of Didier's accident and issued a citation to ECO for failing to provide safety equipment or fall protection to Didier. MSHA did not cite Ash Grove. The Court of Appeals stated that the record contained

little information about what processes actually occurred at the Ash Grove location. In this regard, the Court of Appeals noted that Didier had presented testimony which it determined raised a question of fact as to whether the activities performed at the location were of the type that would subject Ash Grove to OSHA, rather than MSHA, jurisdiction. As noted, the district court had concluded that Ash Grove was under the jurisdiction of MSHA rather than OSHA, and the district court had therefore considered only whether Ash Grove had violated MSHA regulations without considering whether Ash Grove had violated OSHA regulations when the district court concluded that there was no evidence that Ash Grove had breached any statutory or regulatory duty. The Court of Appeals reversed the district court's grant of summary judgment in regard to the MSHA or OSHA issue and remanded the cause for further proceedings. The Court of Appeals affirmed the district court's grant of summary judgment in all other respects. Ash Grove petitioned for further review, which we granted.

## ASSIGNMENTS OF ERROR

On further review, Ash Grove asserts that the Court of Appeals erred in (1) concluding that a genuine issue of material fact existed with respect to whether MSHA or OSHA had jurisdiction over Ash Grove's plant and whether Ash Grove had complied with the relevant regulations and (2) stating that the district court did not address whether Ash Grove breached any nondelegable duty to provide a safe workplace and in "reserving" the issue for further determination.

## STANDARDS OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Willet v. County of Lancaster*, 271 Neb. 570, 713 N.W.2d 483 (2006). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

■■■ Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case. *Washington v. Qwest Communications Corp.*, 270 Neb. 520, 704 N.W.2d 542 (2005). Whether a duty is nondelegable is a question of law. *Breeden v. Anesthesia West*, 265 Neb. 356, 656 N.W.2d 913 (2003). Statutory interpretation presents a question of law. *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court. *Home Builders Assn. v. City of Lincoln*, 271 Neb. 353, 711 N.W.2d 871 (2006).

## ANALYSIS
*Liability to Third Parties of One Who Employs an Independent Contractor for Acts or Omissions of Independent Contractor.*

This case deals with Ash Grove's liability, if any, to Didier where Ash Grove employed an independent contractor, ECO. Therefore, before addressing Ash Grove's specific assignments of error on further review, we review the law relating to the liability of one who employs an independent contractor.

■■■ Generally, one who employs an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. There are two recognized exceptions to the general rule pursuant to which the employer of an independent contractor may be vicariously liable to a third party. Those two exceptions are where (1) the employer retains control over the contractor's work or (2) the employer has a nondelegable duty to protect another from harm. See *Ray v. Argos Corp.*, 259 Neb. 799, 612 N.W.2d 246 (2000). Regarding the second exception involving nondelegable duties, in *Parrish v. Omaha Public Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993), we noted that nondelegable duties included (1) the duty of an owner in possession and control of premises to provide a safe place for work by a contractor's employee, (2) a duty imposed by statute or rule of law, and (3) the duty of due care imposed on an employer of an independent contractor when the contractor's work involves special risks or dangers, including work that is dangerous in the absence of special precautions. We do not read the list of nondelegable duties in *Parrish* as exhaustive, and we

therefore note that nondelegable duties include, but are not limited to, those three listed above.

As we read Didier's petition, the district court's order, the Court of Appeals' decision, and the record and argument in this case, we understand Didier to claim that Ash Grove was liable both because Ash Grove retained control over ECO's work and because Ash Grove had nondelegable duties. With respect to nondelegable duties, Didier asserted that Ash Grove's nondelegable duties included (1) the duty of an owner in possession and control of premises to provide a safe place for work by a contractor's employee, (2) duties imposed by rules and regulations of the U.S. Department of Labor, and (3) the duty of due care imposed on an employer of an independent contractor when the contractor's work involves special risks or dangers. In granting summary judgment in favor of Ash Grove, the district court summarized the facts and, as we read the district court opinion, effectively concluded that Ash Grove either did not have or did not breach any of those duties.

The Court of Appeals affirmed the district court's determination that Ash Grove did not have a nondelegable duty arising from special risks. That issue was not raised on further review, and we therefore do not further discuss special risks herein. The nondelegable duty derived from duties imposed by rules or law and the nondelegable duty due to control of premises by the one who employs an independent contractor are implicated in Ash Grove's two assignments of error on further review. Those issues are discussed below.

*Nondelegable Duty Imposed by Statute or Rule: Court of Appeals Erred in Determining That There Was a Genuine Issue of Material Fact as to the Legal Question of Whether Ash Grove Was Subject to Regulation and Rules Imposed by MSHA or by OSHA.*

In its first assignment of error on further review, Ash Grove asserts that the Court of Appeals erred in finding that a genuine issue of material fact existed with respect to whether MSHA or OSHA had jurisdiction over Ash Grove's Louisville site and in failing to affirm the district court's finding that there was no competent evidence that Ash Grove breached any relevant MSHA rule or regulation. We conclude that because MSHA had

exercised jurisdiction, the Court of Appeals erred as a matter of law in concluding that there was a genuine issue of material fact as to whether MSHA or OSHA should have jurisdiction, and we further conclude that the district court did not err when it found that there was no evidence that Ash Grove had breached any relevant MSHA regulation.

The Court of Appeals' determination that a genuine issue of material fact existed as to whether MSHA or OSHA had jurisdiction was based on the testimony of Didier's expert, Frank Burg. Burg was a self-employed safety and health professional who had previously worked for OSHA. Burg testified that he understood Ash Grove's operations at the site to be a concrete processing operation and that as such, the plant was subject to OSHA jurisdiction rather than MSHA jurisdiction. The Court of Appeals noted that Burg's testimony was somewhat equivocal in that he stated, " 'Other people besides me decide these [jurisdictional questions] and they are deciding on bases that I don't always understand.' " *Didier v. Ash Grove Cement Co.*, No. A-03-924, 2005 WL 2276848 at *13 (Neb. App. Sept. 20, 2005) (not designated for permanent publication). The Court of Appeals acknowledged that the evidence showed MSHA had actually exercised jurisdiction over the plant and investigated Didier's accident. However, the Court of Appeals stated that in reviewing a grant of summary judgment, it was required to view the evidence in the light most favorable to Didier and concluded that at the summary judgment stage, Burg's testimony was sufficient to raise a question of fact as to whether Ash Grove's operations were subject to MSHA or to OSHA jurisdiction. This conclusion overlooks the federal authority which controls the outcome and is contrary to the analysis of the Court of Appeals.

The Occupational Safety and Health Act of 1970, at 29 U.S.C. § 653(b)(1) (2000), provides: "Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." The U.S. Supreme Court has noted that because of the language in § 653(b)(1), "coverage of the [Occupational Safety and Health] Act does not . . . extend to

working conditions that are regulated by other federal agencies." *Chao v. Mallard Bay Drilling, Inc.*, 534 U.S. 235, 241, 122 S. Ct. 738, 151 L. Ed. 2d 659 (2002). The Court noted that the use of the word "exercise" in § 653(b)(1) made clear that actual exercise rather than "mere possession by another federal agency of unexercised authority to regulate certain working conditions" was required to displace OSHA's apparent jurisdiction and that "OSHA is only pre-empted if the working conditions at issue are the particular ones 'with respect to which' another federal agency has regulated." *Id.* Other federal appellate courts have stated that "the preemption inquiry is satisfied once we determine that an agency [such as MSHA] has exercised its authority to prescribe a safety standard or regulation and that regulation covers the specific working conditions at issue." *Pennsylvania Elec. v. Fed. Mine S. & H. Rev. Com'n*, 969 F.2d 1501, 1505 (3d Cir. 1992). See, also, *United Energy Services v. MSHA*, 35 F.3d 971 (4th Cir. 1994).

In the present case, there was undisputed evidence that MSHA had exercised its regulatory authority at Ash Grove's Louisville site and, in particular, that MSHA had exercised authority with respect to the specific accident at issue in this case. There was undisputed evidence that a MSHA investigator was onsite at the time of the accident, that MSHA actually investigated the accident and issued a citation to ECO, and that the citation to ECO identified the Ash Grove operation as a milling operation under the jurisdiction of MSHA. There was no evidence that OSHA, Ash Grove, or ECO disputed MSHA's authority to investigate the accident and to issue a citation.

The evidence as a whole showed without contradiction that MSHA exercised its statutory authority over the specific working conditions related to Didier's accident, and because of the provisions of 29 U.S.C. § 653(b)(1), MSHA's exercise of authority over the particular working conditions at issue in this case preempted OSHA authority over such conditions as a matter of law. Evidence regarding the processes that actually occur at the Louisville site and the comments by Burg which were noted by the Court of Appeals are not material to the resolution of this issue. The district court's conclusion that MSHA had jurisdiction was correct, and the Court of Appeals erred as a matter of law

when it concluded that there was a genuine issue of material fact regarding whether MSHA or OSHA had jurisdiction.

We further conclude, without regard to the discussion by the Court of Appeals, that the district court did not err when it determined that there was no competent evidence that Ash Grove breached any MSHA statutory or regulatory duty or corresponding standard of care. The district court noted that the evidence indicated that Ash Grove had complied with the specific MSHA regulations noted by the parties, and the district court further observed that although MSHA issued a citation to ECO after its investigation of Didier's accident, MSHA issued no citation to Ash Grove. Didier did not present evidence that Ash Grove violated any specific rules or regulations, and on appeal, Didier does not assert specific laws that Ash Grove violated as they bear on the standard of care but simply argues that OSHA rather than MSHA had jurisdiction.

In sum, we conclude that the Court of Appeals erred in reversing the grant of summary judgment in which the district court had concluded that MSHA had jurisdiction and further erred in failing to affirm the district court's grant of summary judgment in which it had determined that Ash Grove had not violated any nondelegable duty imposed by MSHA regulations.

*Nondelegable Duty as Owner of Premises to Provide Safe Place to Work: Court of Appeals Erred in Stating That District Court Had Not Considered Whether Ash Grove Had Violated Nondelegable Duty as Owner in Control of Premises to Provide a Safe Place to Work.*

In its second assignment of error on further review, Ash Grove claims that the Court of Appeals erred when it stated that the district court had not considered the issue of whether Ash Grove as the owner of the premises had breached a nondelegable duty to provide a safe workplace. We agree with Ash Grove that the Court of Appeals misread the district court's opinion and order. We determine that the district court did not fail to consider the issue of whether Ash Grove breached the nondelegable duty to provide a safe workplace and that the district court did not err when it ruled against Didier on this issue.

Ash Grove argues that the Court of Appeals' affirmance of the district court's explicit finding that Ash Grove did not retain

control of the work necessarily prevents a finding that Ash Grove had and breached a nondelegable duty to provide a safe workplace. As noted above, the duty derived from control of work is distinguishable from the nondelegable duty derived from ownership and control of workplace premises, and although both may or may not be present, these duties involve separate considerations. Thus, we do not agree with Ash Grove's analysis that the finding that Ash Grove did not retain control of the work is inconsistent with and prevents a finding that Ash Grove may have had a nondelegable duty arising from its ownership and control of the premises where the work occurred. Nevertheless, on the record in this case, we determine that, contrary to the opinion of the Court of Appeals, the district court did consider and effectively rejected Didier's claim that Ash Grove breached a nondelegable duty arising from its ownership and control of the premises and that the Court of Appeals erred when it stated that the district court had failed to consider this issue. We further determine that the district court did not err when it rejected Didier's claim that Ash Grove breached the nondelegable duty to provide a safe place to work.

As noted above, an employer of an independent contractor is generally not liable for physical harm caused to another by the acts or omissions of the contractor or his servants, but an employer of an independent contractor may be vicariously liable to a third party pursuant to two exceptions, where (1) the employer retains control over the contractor's work or (2) the employer has a nondelegable duty to protect another from harm. See *Ray v. Argos Corp.*, 259 Neb. 799, 612 N.W.2d 246 (2000). As noted above, nondelegable duties include, but are not limited to (1) the duty of an owner in possession and control of premises to provide a safe place for work by a contractor's employee, (2) a duty imposed by statute or rule of law, and (3) the duty of due care imposed on an employer of an independent contractor when the contractor's work involves special risks or dangers, including work that is dangerous in the absence of special precautions. See *Parrish v. Omaha Public Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993).

In its argument on further review, Ash Grove appears to misinterpret this court's opinion in *Parrish.* Although certain

nondelegable duties arise from the owner's possession and control of the premises, not all nondelegable duties are dependent on such possession and control. Ash Grove tends to confuse the employer's retaining control of the work, which gives rise to the first exception noted above, with the employer's retaining control of the premises, which gives rise to one of the nondelegable duties pursuant to the second exception encompassing various nondelegable duties.

We do, however, find merit to Ash Grove's assertion that the Court of Appeals erred when it stated that the district court did not address the issue of whether Ash Grove breached a nondelegable duty to provide a safe workplace arising from its ownership and control of the premises. In its opinion and order, the district court discussed at length the evidence submitted at the hearing on summary judgment. The district court noted specifically the uncontroverted admission by the safety director for ECO that there were no "site-specific or abnormal hazards on top of the flat concrete roof on which the work was to be performed." We read the district court's grant of summary judgment to include an implicit finding that Didier did not present sufficient evidence as a matter of law to show that Didier's accident was the result of Ash Grove's breach of a nondelegable duty arising from its possession and ownership of the premises, and we find no error in the district court's conclusion in this regard. We therefore agree with Ash Grove that the Court of Appeals erred when it stated that the district court did not consider this issue.

## CONCLUSION

We conclude that because MSHA actually exercised jurisdiction, as a matter of law, MSHA preempted OSHA and the Court of Appeals erred in concluding that there was a genuine issue of material fact with regard to whether MSHA or OSHA had jurisdiction over the accident at issue. As a matter of law, MSHA had jurisdiction. The district court did not err in finding no genuine issue of material fact as to whether Ash Grove actually violated any duties derived from MSHA regulations. We further conclude that because the district court's opinion and order implicitly found in Ash Grove's favor on this issue, the Court of Appeals erred in stating that the district court did not consider the issue of whether Ash Grove breached a nondelegable duty to provide a

safe workplace arising from its ownership and control of the premises. We therefore reverse the decision of the Court of Appeals, and we remand the cause with directions to the Court of Appeals to affirm the district court's grant of summary judgment in all respects.

REVERSED AND REMANDED
WITH DIRECTIONS.

WRIGHT, J., participating on briefs.
HENDRY, C.J., not participating.