Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/13/2024 09:07 AM CDT

State of Nebraska ex rel. Catherine Brooks, D.O.,
relator, v. Robert B. Evnen, Secretary of State
of the State of Nebraska, respondent, and
Dr. Andy Robertson et al., intervenors.

State of Nebraska ex rel. Carolyn I. LaGreca,
relator, v. Robert B. Evnen, Secretary of State
of the State of Nebraska, respondent, and
Dr. Andy Robertson et al., intervenors.

___ N.W.3d ___

Filed September 13, 2024.    Nos. S-24-647, S-24-654.

1. **Mandamus: Words and Phrases.** Mandamus is a law action and represents an extraordinary remedy, not a writ of right.
2. **Mandamus.** Whether to grant a writ of mandamus is within a court's discretion.
3. **Mandamus: Proof.** Mandamus relief is available if the movant can show (1) a clear right to the relief sought, (2) a corresponding clear duty to perform the act requested, and (3) that no other plain and adequate remedy is available in the ordinary course of the law.
4. ____: ____. In a mandamus action, the burden lies on the party seeking mandamus to show clearly and conclusively that the party is entitled to the particular thing the relator asks, as respondent is legally obligated to act.
5. **Initiative and Referendum: Justiciable Issues.** A preelection challenge based on the procedural requirements to a voter ballot initiative's placement on the ballot is ripe for resolution.
6. **Initiative and Referendum.** Sufficiency of a ballot, including the single subject requirement, is a procedural requirement suitable for preelection determination.
7. **Declaratory Judgments.** An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute.

8. \_\_\_\_. The purpose of a declaratory judgment action is to declare rights, status, and other legal relations.

9. **Declaratory Judgments: Equity.** Declaratory and equitable relief are not appropriate where another equally serviceable remedy has been provided by law, and such relief is available only in the absence of a full, adequate, and serviceable remedy.

10. **Declaratory Judgments.** The appropriateness of a declaratory judgment is ascertained by the precise relief sought.

11. **Constitutional Law: Initiative and Referendum.** The right of initiative is precious to the people and one which the courts are zealous to preserve to the fullest tenable measure of spirit as well as letter.

12. \_\_\_\_: \_\_\_\_. The power of initiative must be liberally construed to promote the democratic process, and provisions authorizing the initiative should be construed in such a manner that the legislative power reserved in the people is effectual.

13. **Constitutional Law.** A constitution represents the supreme written will of the people regarding the framework for their government.

14. **Constitutional Law: Initiative and Referendum.** The people of Nebraska may amend their Constitution in any way they see fit, provided the amendments do not violate the federal Constitution or conflict with federal statutes or treaties.

15. **Initiative and Referendum: Appeal and Error.** The Nebraska Supreme Court makes no attempt to judge the wisdom or the desirability of enacting initiative amendments.

16. **Constitutional Law: Initiative and Referendum.** A purpose of the language in Neb. Const. art. III, § 2, that "[i]nitiative measures shall contain only one subject" is to avoid logrolling, which is the practice of combining dissimilar propositions into one proposed amendment so that voters must vote for or against the whole package even though they would have voted differently had the propositions been submitted separately.

17. **Initiative and Referendum.** Where the limits of a proposed law, having natural and necessary connection with each other, and, together, are a part of one general subject, the proposal is a single and not a dual proposition.

18. **Constitutional Law: Initiative and Referendum: Intent.** The controlling consideration in determining the singleness of a subject for purposes of article III, § 2, of the Nebraska Constitution is its singleness of purpose and relationship of the details to the general subject, not the strict necessity of any given detail to carry out the general subject. The general subject is defined by its primary purpose.

Original actions. In No. S-24-647, writ of mandamus denied. In No. S-24-654, writ of mandamus denied.

Brenna M. Grasz and Adam W. Kauffman, of Keating, O'Gara, Nedved & Peter, P.C., L.L.O., for relator Catherine Brooks.

Matthew F. Heffron, Michael G. McHale, and Mary Catherine Martin, of Thomas More Society, for relator Carolyn I. LaGreca.

Michael T. Hilgers, Attorney General, Eric J. Hamilton, and Zachary B. Pohlman, for respondent.

Sydney L. Hayes, Kaitlin A. Madsen, and Daniel J. Gutman, of Law Office of Daniel Gutman, L.L.C., and Paul W. Rodney, of Arnold & Porter Kaye Scholer, L.L.P., pro hac vice, for intervenors.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.
### NATURE OF CASE
In these two consolidated original actions, relators challenge a ballot initiative that proposes to amend the Nebraska Constitution to include a right to abortion. Case No. S-24-647 is sometimes referred to as "Brooks," and case No. S-24-654 is sometimes referred to as "LaGreca." A separate case, *State ex rel. Constance v. Evnen, post* p. 600, ___ N.W.3d ___ (2024), is not addressed in this opinion. The relators herein contend, inter alia, that the ballot initiative violates the single subject rule of Neb. Const. art. III, § 2, and the relators seek, inter alia, a writ of mandamus ordering the Nebraska Secretary of State to withhold the initiative from the ballot. We determine that the ballot initiative does not violate the single subject rule, and we deny the writs, thereby denying the relief requested by the relators in both actions. By virtue

of our disposition denying the writs, the alternative writs of mandamus entered in the two actions are dissolved by operation of law.

## STATEMENT OF FACTS

*The Challenged Initiative.*

The relators in these actions challenge the ballot initiative entitled "Protect the Right to Abortion" (the Initiative) that would add a new article I, § 31, to the Nebraska Constitution. The object language shown on the Initiative petition states:

The object of this petition is to:

Amend the Nebraska Constitution to provide all persons the fundamental right to abortion without interference from the state or its political subdivisions until fetal viability, which is the point in pregnancy when, in the professional judgment of the patient's health care practitioner, there is a significant likelihood of the fetus' sustained survival outside the uterus without the application of extraordinary medical measures; or when needed to protect the life or health of the pregnant patient.

The text of the proposed constitutional amendment is as follows:

**Article I of the Nebraska Constitution shall be amended by adding a new section 31 as shown:**

All persons shall have a fundamental right to abortion until fetal viability, or when needed to protect the life or health of the pregnant patient, without interference from the state or its political subdivisions. Fetal viability means the point in pregnancy when, in the professional judgment of the patient's treating health care practitioner, there is a significant likelihood of the fetus' sustained survival outside the uterus without the application of extraordinary medical measures.

The explanatory statement is as follows:

*A vote "FOR" will amend the Nebraska Constitution to provide that all persons shall have a fundamental right to abortion until fetal viability, or when needed to protect*

*the life or health of the pregnant patient, without interference from the state or its political subdivisions. Fetal viability is defined as the point in pregnancy when, in the professional judgment of the patient's treating health care practitioner, there is a significant likelihood of the fetus' sustained survival outside the uterus without the application of extraordinary medical measures.*

*A vote "AGAINST" will not amend the Nebraska Constitution in such manner.*

*Case No. S-24-647: Brooks' Challenge.*

In case No. S-24-647, Catherine Brooks, D.O., filed an application for leave to commence an original action and a verified petition for writ of mandamus. An earlier application had been denied for a deficient verification, but Brooks cured the deficient verification and the application and the petition in the present case are positively verified as true and correct. Brooks challenges the Initiative. We granted leave to commence this original action on August 30, 2024. On September 3, we granted a petition for leave to intervene filed by three sponsors of the Initiative (the Sponsors). We also ordered this case to be consolidated with case No. S-24-654 for oral argument.

The relevant background recited herein is based on the application, petition, and exhibits to the petition. Brooks, a registered voter and resident of Lancaster County, is a practicing neonatologist who specializes in treating premature babies. She and others presented to Robert B. Evnen, Nebraska's Secretary of State, various objections to his announcement that he was certifying two ballot measures, including the Initiative, for the November 5, 2024, general election ballot. On August 27, the Secretary of State conveyed in writing that he would take no action on the objections.

Brooks asserts in her petition two causes of action. Brooks' first cause of action is that the Initiative violates article III, § 2, of the Nebraska Constitution, which requires, in relevant part, that "[i]initiative measures shall contain only one subject."

Without being comprehensive, attachments to the petition identify dissimilar subjects, such as "without interference from the state or its political subdivisions," "fetal viability," and "[a]ll persons." In particular, paragraph 24 of Brooks' petition reads as follows:

> The Initiative violates this [single subject] requirement by containing multiple proposals that are dissimilar, unrelated, and separate purposes, including but not limited to (1) amending the Nebraska Constitution to create a "fundamental right to abortion" for "[a]ll persons", encompassing unrelated propositions of both personal rights and third party rights, such as (a) a fundamental right of men, (b) a fundamental right of women, and (c) a fundamental right of minors (without limit), without regard to sex or pregnant status; (2) creating separate, dissimilar and alternative rights to abortion (a) until "fetal viability" or alternatively (b) for the "life", or for "health", of the pregnant patient; (3) stripping all legislative and regulatory authority from the State and its political subdivisions from legislating and regulating in an area of proposed constitutional law; and (4) redefining the ordinary, legal, and medical meaning, standard, and application of "fetal viability" in a manner that alters the right being proposed entirely.

Brooks' second cause of action is that the language of the Initiative is misleading and causes voter confusion. The asserted confusion is identified in paragraph 30 of the petition, which reads as follows:

> The Initiative's use of (1) unclear, subjective, vague and confusing terms, including without limitation phrases like "[a]ll persons", "health care practitioner", "significant likelihood", "sustained survival", and "extraordinary medical measures", and (2) a new and uncommon redefinition of "fetal viability" containing many of these phrases will confuse voters, cause voter doubt, and mislead voters, who will be unable to discern what they are voting for.

In her request for relief, Brooks seeks a writ of mandamus to compel the Secretary of State to withhold the Initiative from the ballot because it is legally insufficient and fails Nebraska's constitutional requirement for ballot initiatives. In the alternative, if resolution of this mandamus action occurs after the general election ballots are certified, Brooks seeks a writ of mandamus requiring the Secretary of State to abstain from certifying the election results of the proposed constitutional amendment in the Initiative.

*Case No. S-24-654: LaGreca's Challenge.*

Carolyn I. LaGreca filed an application for leave to commence an original action and verified petition for writ of mandamus and declaratory judgment. Two earlier applications were denied based on deficient verifications, but the application and the petition in the instant case are positively verified as true and correct. LaGreca challenges the Initiative. Unlike Brooks in case No. S-24-647, LaGreca did not present her objections to the Initiative to the Secretary of State before she filed her application and petition in this court. On August 30, 2024, we granted leave to commence this original action. On September 3, we granted a petition for leave to intervene filed by the Sponsors. We also ordered this case to be consolidated with case No. S-24-647 for oral argument.

LaGreca is a registered voter and resident of Douglas County. LaGreca asserts in the petition one cause of action—that the Initiative violates the single subject rule of Neb. Const. art. III, § 2. She asserts that the Initiative "contains several subjects and purposes that are not natural and necessary to each other," and she asserts that such subjects and purposes include, but are not limited to,

> (1) a "fundamental right" to abortion until "viability;"
> (2) abortion "without interference from the state," which conflicts with a "fundamental right" to abortion (as the United States Supreme Court specifically has recognized those exact phrases have sharply disparate meanings);

(3) a virtually unlimited right to abortion after "viability," until birth, for undefined "health" reasons; (4) two conflicting standards for abortion before "viability" — a "fundamental right" to abortion versus abortion only for reasons of "life or health;" and (5) opening the viability determination to a great number of non-physician "health care practitioners."

LaGreca further contends that the Initiative "particularly violates the single subject rule, because it combines dissimilar propositions into one ballot initiative, which would force voters to vote for or against the whole package even if they support only certain of the initiative's propositions."

In her request for relief, LaGreca seeks a writ of mandamus to compel the Secretary of State to deny certification and to withhold the Initiative from the ballot. In the alternative, if resolution of this mandamus action occurs after the general election ballots are certified, LaGreca seeks a writ of mandamus requiring the Secretary of State to abstain from certifying the election results on the Initiative. LaGreca further requests that this court enter judgment in her favor and issue a declaratory judgment pursuant to Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 2016), finding and determining that the language in the Initiative is "legally insufficient and invalid, because it violates the single subject clause of Neb. Const. art. III, § 2."

*Alternative Writs and Secretary of State's Responses.*

In each case, after we granted leave to file the action, on August 30, 2024, we issued an alternative writ of mandamus ordering the Secretary of State to withhold and remove the Initiative from the ballot or to show cause why a peremptory writ ordering him to do so should not issue. The Secretary of State responded in both cases on September 4. In case No. S-24-647, he stated that he had advised Brooks and others, as well as the Sponsors, that he would not take a position on

the challenges. In case No. S-24-654, he stated that he had not been asked to consider LaGreca's arguments and had not formed an opinion on them after reviewing the petition filed in this court. In both responses, the Secretary of State noted that the Sponsors had intervened in these actions and stated that the Sponsors would be able to respond to the relators to defend inclusion of the Initiative on the ballot. The Secretary of State further stated that he would not submit briefs or participate in oral argument in these actions. The Secretary of State ultimately stated that his answers showed cause why peremptory writs should not issue.

The relators have filed briefs in their respective cases, and the Sponsors have filed a brief in each case. We heard oral argument by the relators and the Sponsors, and both actions are now submitted to us.

## ISSUES PRESENTED

As noted above, in each action, the relators claim that the Secretary of State should not have placed the Initiative on the ballot because it violates the single subject rule. In case No. S-24-647, Brooks also claims that the Initiative violates a common-law rule set forth in case law, including *Drummond v. City of Columbus*, 136 Neb. 87, 285 N.W. 109 (1939), which she states precludes "confusing, vague, ambiguous, and misleading initiative language that will confuse voters, cause doubt, and undermine the integrity of elections."

In each action, the relators seek a writ of mandamus ordering the Secretary of State to remove the Initiative from the ballot. In case No. S-24-654, LaGreca also seeks a declaratory judgment stating that the Initiative violates the single subject rule.

## APPLICABLE STANDARDS

[1,2] Mandamus is a law action and represents an extraordinary remedy, not a writ of right. *State ex rel. Wagner v. Evnen*, 307 Neb. 142, 948 N.W.2d 244 (2020). Whether to grant a writ of mandamus is within a court's discretion. *Id*.

[3] Mandamus relief is available if the movant can show (1) a clear right to the relief sought, (2) a corresponding clear duty to perform the act requested, and (3) that no other plain and adequate remedy is available in the ordinary course of the law. *Id*.

[4] In a mandamus action, the burden lies on the party seeking mandamus to show clearly and conclusively that the party is entitled to the particular thing the relator asks, as respondent is legally obligated to act. See *State ex rel. Parks v. City of Omaha*, 277 Neb. 919, 766 N.W.2d 134 (2009).

[5,6] We have stated that a preelection challenge based on the procedural requirements to a voter ballot initiative's placement on the ballot is ripe for resolution. *State ex rel. Wagner v. Evnen, supra*. Sufficiency of a ballot, including the single subject requirement, is a procedural requirement suitable for preelection determination. See *id*.

[7,8] An action for declaratory judgment is sui generis; whether such action is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Castillo v. Libert Land Holdings 4*, 316 Neb. 287, 4 N.W.3d 377 (2024). The purpose of a declaratory judgment action is to declare rights, status, and other legal relations. § 25-21,149; *McKay v. Bartels*, 316 Neb. 235, 3 N.W.3d 920 (2024).

## ANALYSIS

All relators in their respective petitions challenge the Initiative based on the single subject rule, and all relators seek relief in the form of a writ of mandamus. Before considering these common aspects of the two petitions, we address issues unique to each petition.

*Case No. S-24-647: Brooks' Claim That the Initiative Violates a Common-Law Rule Regarding "Confusing" Language.*

In addition to claiming that the Initiative violates the constitutional single subject rule, Brooks claims the Initiative

violates a common-law rule that she contends precludes "confusing, vague, ambiguous, and misleading initiative language that will confuse voters, cause doubt, and undermine the integrity of elections." Brooks cites *Drummond v. City of Columbus*, 136 Neb. 87, 285 N.W. 109 (1939), in support of her contention.

At issue in *Drummond* was the language of a proposed municipal initiative, and in that case, this court adopted a single subject rule for such initiative. This court has applied *Drummond* and the concepts set forth therein in other cases involving municipalities. See, *City of North Platte v. Tilgner*, 282 Neb. 328, 803 N.W.2d 469 (2011); *City of Fremont v. Kotas*, 279 Neb. 720, 781 N.W.2d 456 (2010), *abrogated, City of North Platte v. Tilgner, supra*.

The Initiative, however, is not a municipal initiative and the common-law rule set forth in the cited cases does not apply. Instead, the Initiative is governed by Neb. Const. art. III, § 2, including the single subject rule set forth therein. While this court has cited *Drummond* and the concepts set forth therein when analyzing the single subject rule under Neb. Const. art. III, § 2, the common-law rule does not have independent application to the Initiative. Instead, the Initiative is properly analyzed under the single subject rule of Neb. Const. art. III, § 2, and precedent interpreting and applying that constitutional provision. Therefore, we do not separately consider Brooks' arguments regarding a common-law single subject rule, and we consider the arguments only to the extent they are relevant to the single subject rule of Neb. Const. art. III, § 2.

In this regard, we reiterate the following regarding the standards set forth in *Drummond* and similar cases and the relevance of those standards in the context of the constitutional single subject rule in Neb. Const. art. III, § 2.

In the plurality opinion in *State ex rel. McNally v. Evnen*, 307 Neb. 103, 120-21, 948 N.W.2d 463, 477-78 (2020),

which we quote from at length in this opinion, we previously
stated as follows:

In *State ex rel. Loontjer v. Gale*[, 288 Neb. 973,
853 N.W.2d 494 (2014)], we were considering constitu-
tional amendments proposed by the Legislature and the
separate vote requirement of Neb. Const. art. XVI, § 1,
which governs constitutional amendments proposed by
the Legislature. We referred to *Tilgner*[, *supra*], which
described a natural and necessary test for the single vote
requirement set forth in subsection (1) of the quoted lan-
guage regarding municipal ballot measures. We concluded
that the natural and necessary test for the single vote
requirement for municipal ballot measures should also
be used in connection with the separate vote provisions
of Neb. Const. art. XVI, § 1, governing constitutional
amendments proposed by the Legislature.

In *State ex rel. Loontjer v. Gale, supra*, we recog-
nized that among the reasons for a single subject rule
is that including multiple subjects could confuse voters
and create doubt, but we have not said that confusion
or doubt are separate requirements for a legally insuf-
ficient measure or that they are required elements of the
test to determine whether a measure violates the single
subject requirement. As we noted above, in *Christensen
v. Gale*, 301 Neb. 19, 917 N.W.2d 145 (2018), we said
that the natural and necessary test described in *State ex
rel. Loontjer v. Gale, supra*, for the separate vote require-
ment under Neb. Const. art. XVI, § 1, for constitutional
amendments proposed by the Legislature is also an appli-
cable framework to consideration of the single subject
rule for initiatives brought under Neb. Const. art. III,
§ 2. Therefore, the natural and necessary test governs our
single subject analysis in this case.

The natural and necessary test and other standards applicable
to the Initiative in these cases are discussed further below.

*Case No. S-24-654: LaGreca's Request*
*for Declaratory Relief.*

In addition to requesting relief in the form of a writ of mandamus, LaGreca also seeks a declaratory judgment stating that the Initiative violates the single subject rule.

[9,10] Declaratory and equitable relief are not appropriate where another equally serviceable remedy has been provided by law, and such relief is available only in the absence of a full, adequate, and serviceable remedy. *McKay v. Bartels*, 316 Neb. 235, 3 N.W.3d 920 (2024). The appropriateness of a declaratory judgment is ascertained by the precise relief sought. *Id.*

The precise declaratory relief LaGreca seeks is a declaration that the Initiative violates the constitutional single subject rule. As evidenced by LaGreca's request for a writ of mandamus premised on a determination that the Initiative violates the constitutional single subject rule, an equally serviceable remedy has been provided by law, and we determine that such remedy is a full, adequate, and serviceable remedy for what LaGreca seeks in terms of declaratory relief. We therefore determine that declaratory relief is not available to LaGreca in this action. Furthermore, as discussed below, we determine that the Initiative does not violate the constitutional single subject rule and that therefore, the declaratory relief requested would not be appropriate even if it were available.

*Cases Nos. S-24-647 and S-24-654: Claim That*
*the Initiative Violates Single Subject*
*Rule of Neb. Const. Art. III, § 2;*
*Applicable Standard Applied.*

Each relator claims that the Initiative violates the single subject rule of Neb. Const. art. III, § 2. We reject their claims. We begin by setting forth standards regarding art. III, § 2.

[11,12] The people have the power to amend the Nebraska Constitution and enact statutes by the initiative process pursuant to Neb. Const. art. III, § 2, which provides in part: "The

first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature." We have repeatedly said that the right of initiative is precious to the people and one which the courts are zealous to preserve to the fullest tenable measure of spirit as well as letter. *State ex rel. McNally v. Evnen*, 307 Neb. 103, 948 N.W.2d 463 (2020) (plurality opinion); *Christensen v. Gale*, 301 Neb. 19, 917 N.W.2d 145 (2018); *Hargesheimer v. Gale*, 294 Neb. 123, 881 N.W.2d 589 (2016); *Stewart v. Advanced Gaming Tech.*, 272 Neb. 471, 723 N.W.2d 65 (2006); *State ex rel. Lemon v. Gale*, 272 Neb. 295, 721 N.W.2d 347 (2006); *Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003); *State ex rel. Stenberg v. Moore*, 258 Neb. 199, 602 N.W.2d 465 (1999). The power of initiative must be liberally construed to promote the democratic process, and provisions authorizing the initiative should be construed in such a manner that the legislative power reserved in the people is effectual. *State ex rel. McNally v. Evnen, supra*; *Stewart v. Advanced Gaming Tech., supra*.

[13-15] A constitution represents the supreme written will of the people regarding the framework for their government. *State ex rel. McNally v. Evnen, supra*; *State ex rel. Johnson v. Gale*, 273 Neb. 889, 734 N.W.2d 290 (2007). The people of Nebraska may amend their Constitution in any way they see fit, provided the amendments do not violate the federal Constitution or conflict with federal statutes or treaties. *State ex rel. McNally v. Evnen, supra*; *State ex rel. Johnson v. Gale, supra*. This court makes no attempt to judge the wisdom or the desirability of enacting initiative amendments. *Id*.

[16] Among other matters related to initiatives, Neb. Const. art. III, § 2, provides that "[i]nitiative measures shall contain only one subject." We have stated that a purpose of this language is to avoid logrolling, which is the practice of combining dissimilar propositions into one proposed amendment so that voters must vote for or against the whole package even though they would have voted differently had the propositions

been submitted separately. *State ex rel. McNally v. Evnen, supra*; *Christensen v. Gale, supra*.

[17,18] We have followed and continue to follow the natural and necessary connection test that we have set forth as follows: Where the limits of a proposed law, having natural and necessary connection with each other, and, together, are a part of one general subject, the proposal is a single and not a dual proposition. *Id*. The controlling consideration in determining the singleness of a subject for purposes of article III, § 2, of the Nebraska Constitution is its singleness of purpose and relationship of the details to the general subject, not the strict necessity of any given detail to carry out the general subject. *State ex rel. McNally v. Evnen, supra*; *Christensen v. Gale, supra*. The general subject is defined by its primary purpose. *Id*.

Brooks generally argues that the Initiative violates the single subject rule because it "creates multiple rights of varying favorability and redefines terms in ways that are unrelated to any primary purpose" and because it "contains propositions that are not naturally and necessarily connected and are sufficiently separable." Brief for relator in case No. S-24-647 at 17. Brooks specifically contends that the Initiative (1) creates rights to abortion both until fetal viability and, alternatively, when needed to protect life or health; (2) redefines the term "fetal viability" and alters medical standards and practices; (3) creates both a personal right of a pregnant woman and "third-party rights" not based on pregnancy status or sex; (4) applies to minors without restriction; and (5) creates a right to abortion and contains a separate regulatory provision to end government interference with the right. See *id*.

LaGreca generally argues that while the Initiative has a general subject of "enshrining a 'fundamental right' to abortion before 'viability,'" the Initiative "also contains multiple secondary subjects that are not 'naturally and necessarily' connected to that general subject." Brief for relator in case No. S-24-654 at 30. LaGreca specifically contends that the

Initiative (1) provides for abortion without interference from the state, which she contends is a separate subject from creating a fundamental right to abortion; (2) provides both for abortion until viability and for health reasons after viability; (3) creates different rights before viability and after viability; and (4) allows "a potentially large number" of health care practitioners to determine viability. See *id*. at 44.

Each relator generally contends that the Initiative violates the single subject rule. As the Sponsors note, the Initiative is "not complex" and the proposed constitutional amendment contains two sentences, "one of which defines a key term used in the other." Brief for intervenors in case No. S-24-647 at 28. We agree with the contention of the Sponsors and conclude that the Initiative does not contain multiple subjects that are not naturally and necessarily connected to the general subject.

As set forth above and repeated here, the text of the constitutional amendment contained in the Initiative is as follows:

> **Article I of the Nebraska Constitution shall be amended by adding a new section 31 as shown:**
>
> All persons shall have a fundamental right to abortion until fetal viability, or when needed to protect the life or health of the pregnant patient, without interference from the state or its political subdivisions. Fetal viability means the point in pregnancy when, in the professional judgment of the patient's treating health care practitioner, there is a significant likelihood of the fetus' sustained survival outside the uterus without the application of extraordinary medical measures.

As set forth above, the stated object of the Initiative is to

> [a]mend the Nebraska Constitution to provide all persons the fundamental right to abortion without interference from the state or its political subdivisions until fetal viability, which is the point in pregnancy when, in the professional judgment of the patient's health care practitioner, there is a significant likelihood of the fetus' sustained survival outside the uterus without the application

     of extraordinary medical measures; or when needed to
     protect the life or health of the pregnant patient.
We view the text of the Initiative as significantly similar to, and no more complex or broad than, the stated object.

The object statement does not necessarily define the subject for purposes of single subject analysis. However, it informs our reading of the proposed constitutional provision. To the extent the object statement might be too broad to be considered the proper subject for single subject textual analysis, it nevertheless confirms that the subject of the Initiative is creation of a constitutional right to abortion. With that understanding, we determine that the parts of the Initiative are all naturally and necessarily related to that subject.

The relators dissect the two sentences of the Initiative and examine the words of those sentences to argue that the Initiative contains multiple separate subjects. However, we read all parts of the Initiative as setting parameters of the constitutional right that the Initiative seeks to create or as defining terms that describe the nature and extent of the right.

Much of the relators' argument is that these limitations, parameters, and definitions are each separate subjects. We have stated that in single subject analysis, "[t]he controlling consideration in determining the singleness of a subject . . . is its singleness of purpose and relationship of the details to the general subject, not the strict necessity of any given detail to carry out the general subject." *State ex rel. McNally v. Evnen*, 307 Neb. 103, 119, 948 N.W.2d 463, 477 (2020) (plurality opinion); *Christensen v. Gale*, 301 Neb. 19, 917 N.W.2d 145 (2018). Having reviewed the text of the proposed constitutional amendment, we determine that the parts of the Initiative all relate to the same general subject of creating a constitutional right to abortion. The parts of the Initiative define the limits and set parameters for that right and define terms for purposes of the proposed constitutional provision. The fact that the drafters of the Initiative have made certain choices regarding the specific limits, parameters, and definitions does

not mean that each such provision is a separate subject. Instead, all provisions are directed to the general subject of creating a specific constitutional right to abortion with certain chosen limits, parameters, and definitions.

To the extent the relators argue that the provisions of the Initiative could result in "logrolling," we have described "logrolling" as "the practice of combining dissimilar propositions into one proposed amendment so that voters must vote for or against the whole package even though they would have voted differently had the propositions been submitted separately." *State ex rel. McNally v. Evnen*, 307 Neb. at 118-19, 948 N.W.2d at 476. The provisions of the Initiative are not "dissimilar propositions," and instead, all relate to the general subject of a right to abortion. We reject the argument that "logrolling" occurs merely because a specific voter might not agree with all the specific details while supporting the general subject. "Logrolling" occurs only when there are dissimilar provisions, not when the provisions make specific choices within the context of the general subject.

We note that our decision in this case aligns with a decision of the Florida Supreme Court issued earlier this year. In *Advisory Op. to Att'y Gen. re Abortion*, 384 So. 3d 122 (Fla. 2024), that court rejected a challenge to a voter initiative based on a single subject provision in the Florida Constitution. The sponsors contended that the initiative addressed a single subject, "'limiting government interference with abortion.'" *Advisory Op. to Att'y Gen. re Abortion*, 384 So. 3d at 129. The Florida Supreme Court rejected the argument that the initiative embraced two subjects: a right to abortion previability and a right to abortion when necessary to protect the mother's health. It explained that both the viability and health provisions related to the single subject identified by the sponsors. It also rejected the argument that the initiative violated the single subject provision merely because some voters might support some portion of the proposed amendment and oppose others.

We determine that the Initiative does not include multiple subjects, and instead we determine that the provisions of the proposed constitutional amendment are naturally and necessarily related to the general subject. We therefore conclude that the Initiative does not violate the single subject rule of Neb. Const. art. III, § 2.

## CONCLUSION

We determine that the Initiative seeks to create a constitutional right to abortion and has a singleness of subject, and we conclude that the Initiative does not violate the single subject rule of Neb. Const. art. III, § 2. Within the context of the proposed Initiative, the use of additional words upon which Brooks and LaGreca rely are not separate subjects but facets of the singular subject to create a constitutional right to abortion. We therefore conclude that the relators are not entitled to the writs of mandamus requested in their respective original actions. We further conclude that LaGreca is not entitled to the declaratory judgment requested in case No. S-24-654. We deny the writs of mandamus in each case. By operation of law, the alternative writs entered in each action are dissolved.

In No. S-24-647, writ of mandamus denied.
In No. S-24-654, writ of mandamus denied.